270 P.3d 1013

Malama SOLOMON, State Senator, 1st Senatorial District; Louis Hao; Patricia A. Cook; And Steven G. Pavao, Petitioners,

v.

Neil ABERCROMBIE, Governor, State of Hawai'i; Scott Nago, Chief Election Officer, State of Hawai'i; State of Hawai'i 2011 Reapportionment Commission; Victoria Marks; Lorrie Lee Stone; Anthony Takitani; Calvert Chipchase IV; Elizabeth Moore; Clarice Y. Hashimoto; Harold S. Masumoto; Dylan Nonaka; and Terry E. Thomason, Respondents.

Michael J. Matsukawa, Petitioner,

v.

State of Hawai'i 2011 Reapportionment Commission; and Scott Nago, Chief Election Officer, State of Hawai'i, Respondents.

Nos. SCPW–11–0000732,
SCPW–11–0000741.

Supreme Court of Hawai'i.

Jan. 6, 2012.

Michael J. Matsukawa, petitioner pro se.

Russell A. Suzuki, Diane Erickson, and Robyn B. Chun, Deputy Attorneys General, for respondents Chief Election Officer Scott Nago, State of Hawai'i 2011 Reapportionment Commission, Victoria Marks, Lorrie Lee Stone, Anthony Takitani, Calvert Chipchase IV, Elizabeth Moore, Clarice Y. Hashimoto, Harold S. Masumoto, Dylan Nonaka, and Terry E. Thomason.

Charlene M. Aina and Harvey E. Henderson, Deputy Attorneys General, for respondent Governor Neil Abercrombie.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, DUFFY, and McKENNA, JJ.

PER CURIAM.

In these related original proceedings, the petitioners petitioned this court pursuant to the Hawai'i Constitution, article IV, section 10, quoted *infra*, for: (1) a judgment invalidating the 2011 Final Reapportionment Plan for the state legislature adopted and filed on September 26, 2011 by the State of Hawai'i 2011 Reapportionment Commission; (2) a writ of mandamus directing the Reapportionment Commission to prepare and file a new reapportionment plan for the state legislature; and (3) a writ of mandamus directing the Chief Election Officer to rescind the publication of the 2011 Final Reapportionment Plan.

On January 4, 2012, we issued orders granting the petitions. We concluded that the 2011 Final Reapportionment Plan is constitutionally invalid because: (1) the Hawai'i Constitution, article IV, section 4, expressly mandates that only permanent residents be counted in the population base for the purpose of reapportionment and (2) the 2011 Final Reapportionment Plan disregards this constitutional mandate by including non-permanent residents in the population base that the Reapportionment Commission used to allocate the members of the state legislature among the basic island units. We invalidated the 2011 Final Reapportionment Plan and directed the Reapportionment Commission to prepare and file a new reapportionment plan that: (1) allocates the members of the state legislature among the basic island units by using a permanent resident population base, and then (2) apportions the members among the districts therein as provided by article IV, section 6. We further directed the Chief Election Officer to rescind the publication of the 2011 Final Reapportionment Plan for the state legislature.

## I. BACKGROUND

### A.

The Hawai'i Constitution, article IV (Reapportionment), requires, every tenth year after 1981, reapportionment for the state legislature and congressional districts. Reapportionment is effected by a reapportionment plan filed by a nine-member reapportionment commission constituted in the reapportionment year.

Article IV, as originally enacted in 1978, provided for reapportionment of the state legislature by requiring allocation—among the four basic island units of the 25 senatorial districts and the 51 house of representative districts—"on the basis of the number of voters registered in the last preceding general election." Though the registered voter basis was upheld as constitutional by the United States Supreme Court because it

approximated a plan based on a permissible population base,[1] the 1991 Reapportionment Commission concluded, after analyzing its data, that use of the voter registration basis would not result in a constitutionally permissible apportionment plan. It selected, as an alternative apportionment base, the permanent resident population, identified as the total population derived from the 1990 census, less transients. It hired a research firm to "determine which transients were counted in the census, how many there were and whether or not they could be located in specific census blocks." The research firm, upon consultation, reported to the 1991 Reapportionment Commission that "the nonresident military is the only large, census-block-identifiable group of nonresidents included in the census" and that "other groups, such as nonresident students, are statistically insignificant and cannot be easily placed in specific census blocks." The 1991 Reapportionment Commission thereupon decided to exclude, from the permanent resident population base, nonresident military personnel and their dependents as constituting "the vast majority of transients included in the census counts." It stated, in its final reapportionment plan, that "exclusion of nonresident military from the census data will come as close as possible to the desired permanent resident base for legislative reapportionment" because: (1) nonresident military then constituted about 114,000 or 14% of Hawaii's population; (2) most military personnel considered Hawaiʻi a temporary home and only 3% opted to become Hawaiʻi citizens; and (3) 98% of military dependents claimed the same residency as the military member of the family.

The 1991 Reapportionment Commission's final reapportionment plan was the basis, in the 1992 legislative session, for House Bill 2327 to amend article IV of the Hawaiʻi Constitution to change the state legislature apportionment base from registered voters to permanent resident population "based on the 1991 Reapportionment Commission's Final Reapportionment Plan" and "the reasons set forth in [the] Plan." House Bill 2327 was enacted by the 1992 legislature and article IV of the Hawaiʻi Constitution was amended by Hawaiʻi voters in 1992 to its present form.

## ARTICLE IV

## REAPPORTIONMENT

. . . .

## APPORTIONMENT AMONG BASIC ISLAND UNITS

Section 4. The [reapportionment] commission shall allocate the total number of members of each house of the state legislature being reapportioned among the four basic island units, namely: (1) the island of Hawaii, (2) the islands of Maui, Lanai, Molokai and Kahoolawe, (3) the island of Oahu and all other islands not specifically enumerated, and (4) the islands of Kauai and Niihau, using the total number of permanent residents in each of the basic island units and computed by the method known as the method of equal proportions; except that no basic island unit shall receive less than one member in each house.

. . . .

## APPORTIONMENT WITHIN BASIC ISLAND UNITS

Section 6. Upon the determination of the total number of members of each house of the state legislature to which each basic island unit is entitled, the commission shall apportion the members among the districts therein and shall redraw district lines where necessary in such manner that for each house the average number of permanent residents per member in each district is as nearly equal to the average for the basic island unit as practicable.

The apportionment provisions of article IV, sections 4 and 6 are incorporated in the reapportionment statute, HRS Chapter 25, which provides that the reapportionment commission "shall reapportion the members of each house of the legislature on the basis, method, and criteria prescribed by the Constitution of the United States and article IV of the Hawaii Constitution." HRS § 25–2(a) (2009).

The reapportionment commission, within 150 days from the date that its members are

---

1. *Burns v. Richardson,* 384 U.S. 73, 96, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966)

certified, "shall file with the chief election officer a reapportionment plan for the state legislature ... which shall become law after publication as provided by law." Article IV, section 2; HRS § 25–2(a). "Within fourteen days after the filing of the final reapportionment plan, the chief election officer shall cause public notice to be given of the final legislative reapportionment plan which, upon public notice, shall become effective as of the date of filing and govern the election of members of the next five succeeding legislatures." HRS § 25–2(a). "In the event of a successful court challenge of a reapportionment plan, the reapportionment commission shall continue in operation and may assist the court in formulating a new reapportionment plan." HRS § 25–9 (2009).

### B.

2011 being a reapportionment year, the State of Hawai'i 2011 Reapportionment Commission ("the Commission") was certified on April 29, 2011 [2] and tasked with adopting and filing a final reapportionment plan by September 26, 2011.

The Commission, at its initial organizational meetings, adopted "Standards and Criteria" that it would follow for the 2011 reapportionment of the congressional and state legislative districts. The "Standards and Criteria" for the state legislative districts stated:

*Standards and criteria that shall be followed:*

The population base used shall be the "permanent resident" population of the State of Hawaii. The permanent resident population is the total population of the State of Hawaii as shown in the last U.S. census less the following: non-resident students and non-resident military sponsors.

At meetings on May 11 and 24, 2011, the Commission was briefed on Hawaii's population growth since the 2001 reapportionment, the history of Hawaii's reapportionment, and the constitutional and statutory provisions governing reapportionment. It was provided with data from the 2010 Census showing a 12% increase in the state's total population consisting of increases of 24% in Hawai'i County, 21% in Maui County, 15% in Kauai County, and 9% in Oahu County. It was informed of article IV, section 4 and 6's permanent resident basis for apportioning the state legislature and informed—by counsel to the 2001 Reapportionment Commission—that the 2001 Commission computed the permanent residence base by excluding nonresident military personnel and their dependents, and nonresident college students. It was informed by Commission staff that data on Hawaii's nonresident military population had been requested from the Defense Manpower Data Center (DMDC) through the U.S. Pacific Command (USPACOM) and that Hawaii's nonresident student population would be identified by their local addresses and assigned to specific census blocks. The Commission, at the conclusion of the May meetings, solicited advice from the apportionment advisory councils [3] as to whether nonresident military and nonresident students should be excluded from the permanent resident base.

The Maui and Kauai advisory councils recommended, at the Commission's June 9, 2011 meeting, to exclude nonresident military and nonresident students.[4] Commissioner Takitani thereupon asked Commission staff whether the current apportionment of the state legislature would change if apportionment were computed on the total resident population, without exclusion of nonresidents. Commission staff indicated that there would be no change in apportionment without ex-

---

**2.** The Commission members are Victoria Marks, Chairperson, Calvert Chipchase IV, Clarice Hashimoto, Harold Masumoto, Elizabeth Moore, Dylan Nonaka, Lorrie Lee Stone, Anthony Takitani and Terry Thomason. Marks was appointed by this court as the ninth member and Chairperson on April 29, 2011, pursuant to article IV, section 2, after the eight Commission members were unable to select the ninth member.

**3.** HRS § 25–7 (2009) (apportionment advisory councils) ("The apportionment advisory councils

for the respective basic island units shall be constituted at the same time as the reapportionment commission[.] Each advisory council shall serve in an advisory capacity to the reapportionment commission as to matters affecting its basic island unit.").

**4.** The Hawaii advisory council later recommended exclusion only of nonresident military. The Oahu advisory council's recommendation is not reflected in the Commission's proceedings.

clusion of nonresidents, but that Oahu County's senate seats would be reduced from 18 to 17 and Hawai'i County's senate seats would be increased from 3 to 4 with an extraction of nonresidents of over 20,000.

The Commission, at its June 28, 2011 meeting, voted 8–1 to apportion the state legislature by using the 2010 Census count—without exclusion of nonresident military and dependents and nonresident students—as the permanent resident base.

The Commission's June 28, 2011 decision came to the attention of Hawai'i County legislator Robert Herkes, who immediately sought an opinion from the Attorney General on whether the Commission acted lawfully in deciding to include nonresident military and dependents and nonresident students in the permanent resident base.

The Attorney General, by letter to Herkes of July 19, 2011, opined that "the Hawai'i Supreme Court would likely hold that to the extent they are identifiable, nonresident college students and nonresident military members and their families *cannot* properly be included in the reapportionment population base the Commission uses to draw the legislative district lines this year." (Original underscoring). The opinion was based on the legislative history of the 1992 "permanent resident" amendment to article IV, section 4, and the Hawai'i Supreme Court's interpreta-

tion of "resident population," as used the Hawai'i County Charter, as excluding nonresident college students and nonresident military personnel and their dependents from the population base for purposes of apportioning county council districts.[5] The opinion was forwarded to the Commission.

The Commission, at its August 17, 2011 meeting, was provided by Commission staff with the following summary of data requested and received from DMDC and USPACOM on Hawaii's non-permanent military resident population and from Hawai'i universities on non-permanent student resident population.

*STAFF SUMMARY OF DATA SUBMITTED FROM THE MILITARY AND UNIVERSITIES FOR USE IN THE NON–PERMANENT POPULATION ADJUSTMENT TO THE 2010 CENSUS DATA*

The 2011 reapportionment project staff asked for non-permanent population data from the historical data sources to accomplish its constitutionally required population adjustment in determining the permanent resident population.

The staff requested the military through USPACOM to provide a data set of Active Duty personnel and dependents who declare a state other than Hawaii as their home state. The data was provided segregated by U.S. Postal Zip Codes.

USPACOM provided the following counts:

Active Duty:

| | |
|---|---|
| Declares state other than Hawaii as home state | 47,082 |
| Declares Hawaii as their home state | 933 |
| Active Duty dependents in Hawaii | 58,949 |

We are in the process of evaluating the data to determine where these people live. We are then trying to place them in Group Quarters on base, base housing on base, or off-base housing through the reported U.S. Zip Code. We are trying to accomplish this in a reasonable and appropriate process.

The staff requested the universities throughout the state to provide data of students who pay out of state tuition.
The universities provided the following counts:

| | |
|---|---|
| Hawaii Pacific University international and mainland students by address. Some of these addresses are associated with military bases or commands. | 3,203 |

---

**5.** *Citizens for Equit. & Resp. Gov't v. County,* 108      Hawai'i 318, 120 P.3d 217 (2005).

| Brigham Young University Hawaii international and non-international students by address | 627 |
|---|---|
| University of Hawaii System students by U.S. Zip Codes | 10,493 |

Chaminade University did not report. From their website total enrollment 2,781
59% Hawaii resident 41% other than Hawaii

Commission staff provided the following explanation as to "permanent and non-permanent military residents."

The non-permanent resident extraction model used in 1991 and 2001 [reapportionments] relied on receiving location specific (address or Zip Code) residence information for the specific non-permanent residents to be extracted.

In 2011, the data received from DMDC does not provide residence information for military sponsors nor does it provide specific breakdowns of permanent and non-permanent residents by location.

This lack of specific data from DMDC does not allow the model used previously to be used at this time.

Commission staff further noted that the DMDC data reported the location of active duty military by the zip codes of their duty stations, not their residences, and that the data did not designate the military dependents as residents or nonresidents. For these reasons, the Commission decided that the DMDC data did not provide an accurate basis for determining Hawaii's non-permanent military resident population and it decided to use data from the 2010 Census for this purpose.

Commission staff thereafter developed its own "model" for the "extraction of non-permanent residents" for the 2011 reapportionment. Commission staff operated on the premise that non-permanent residents—ac-

tive duty military who declare Hawai'i not to be their home state and their dependents, and out-of-state university students—were to be identified according to the specific location of their residences within each of the four counties. Because the 2010 Census data and the university data did not include the residence addresses for all of the non-permanent active duty military residents and their dependents and the out-of-state university students, Commission staff identified three groups of non-permanent residents: Extraction A, Extraction B, and Extraction C. The groups were based on the level of "certainty in determining [the residents'] non-permanency and location." Extraction A were residents whose specific locations were certain and included out-of-state university students with known addresses and active duty military, with "fairly certain non-permanent status," living in military barracks. Extraction B included all residents in Extraction A, plus active duty military and their dependents, with "less certain non-permanent status," living in on-base military housing. Extraction C included all residents in Extraction A and Extraction B, plus out-of-state university students with addresses identified only by zip code.

From the 2010 Census data and the university data, Commission Staff "extracted" the following numbers of active duty military and their dependents and out-of-state university students for purposes of computing the permanent residence base for the 2011 apportionment.

| Extraction A | | Extraction B | | Extraction C | |
|---|---|---|---|---|---|
| Oahu | 15,660 | Oahu | 72,609 | Oahu | 78,524 |
| Hawaii | 793 | Hawaii | 796 | Hawaii | 921 |
| Maui | 4 | Maui | 4 | Maui | 178 |
| Kauai | 1 | Kauai | 143 | Kauai | 198 |
| | 16,458 | | 73,552 | | 79,821 |

The above numbers were presented to the Commission in an "Extraction of Non–Permanent Residents" wherein Commission staff noted that "under Extractions B or C, Oahu receives 17 and Hawaii receives 4 senate seats."

The Commission was scheduled to meet at its final meeting on September 19, 2011 to adopt a final reapportionment plan. It held a public hearing [6] in Hilo on September 13,

---

**6.** HRS § 25–2(a) ("[T]he commission shall conduct public hearings [on legislative reapportion-

ment].... At least one public hearing on the

2011 wherein attorney Stanley Roehrig testified on behalf of Hawai'i County Senator Malama Solomon and three members of the Hawai'i County Democratic Committee[7] on the "extraction" of nonresidents for the apportionment of senate seats. Roehrig cited to the Commission's August 17, 2011 "Staff Summary" showing a state population of 47,082 non-permanent active duty military residents, 58,949 military dependents, and 15,463 out-of-state university students. He testified that this total population of 121,494 must be "extracted" from the total resident population of 1,330,301 to compute the permanent resident base for the 2011 apportionment of senate seats and that such computation resulted in an increase of Hawai'i County's senate seats from 3 to 4.

Senator Solomon, at the September 13, 2011 public hearing, read into the record the following September 12, 2011 letter to the Commission from Governor Abercrombie.

I want to register my strong support for drawing the [legislative district] lines on the basis of residency.

The alternative of including non-residents in the count severely distorts the actual population shifts which have taken place across Hawaii over the last 10 years.

In particular, the population growth on the Big Island will literally be ignored and in effect non-residents substituted for them in the guise of phantom voters. The likelihood of nonresidents registering in any numbers remotely reflecting the population changes I've cited is highly unlikely. Arguments have been made that formulating districts absent a non-resident count would be challenging. Such an observation is entirely beside the point. One does not fail to implement one's duty under the law because doing so presents difficulties, logistical or otherwise.

On the contrary, our obligation is to adhere to policies that reflect the legislative intent of the law regardless of whatever obstacles may appear.

In this instance my understanding is that sufficient information exists to reasonably account for the whereabouts of non-residents enough so that any contention that adequate knowledge is not available is essentially moot.

I believe the Attorney General has already presented a preliminary view that counting nonresidents is not warranted in law and it certainly is not the present practice. I believe that to undermine or deny Neighbor Island population growth for redistricting purposes is discriminatory on its face.

Eight of the nine members of the Commission met as scheduled on September 19, 2011 to vote on a final reapportionment plan. Commission staff briefed the Commission on the "extraction of non-permanent residents" presented in Extractions A, B and C.

After briefing and discussion, it was moved by Chairperson Marks and seconded by Commissioner Thomason that the Commission compute the permanent resident base for the 2011 legislative apportionment by excluding, from the 2010 census population, the 16,458 residents identified in Extraction A.

Commissioners Nonaka and Moore voted "no" as to any exclusion of nonresidents as discriminatory. Commissioners Thomason, Chipchase, Stone, and Hashimoto voted "yes" to Extraction A as providing a "precise," "certain," and "identifiable" base of non-permanent residents. Commissioner Takitani voted "no" to Extraction A because the Commission's data on active duty military, military dependents, and out-of-state university students showed a non-permanent resident population of "at least" 61,411 and "potentially" 120,360. Chairperson Marks stated a "preference" for Extraction B of 73,552 non-permanent residents because, according to the Commission's data, 47,082 active duty military declare Hawai'i as not their home and, "on a numbers basis," "73,552 [Extraction B] is closer to 47,082 than 16, 4[58] [Extraction A] is to 47, 082." The vote for Extraction A standing at 4 "yes" votes and 3 "no" votes, Marks—stating that "some extraction has to occur" and "we need a majority to have some extraction take place"— "reluctantly" voted "yes" for Extraction A,

proposed reapportionment plan shall be held in each basic island unit after initial public notice of the plan.").

7. Louis Hao, Patricia A. Cook and Steven G. Pavao

even though it "didn't represent everything [she] would like."

The Commission adopted a final reapportionment plan that computed the permanent resident base by excluding 16,458 active duty military and out-of-state university students from the 2010 census population of 1,330,301 and apportioned each house of the legislature by allocating and maintaining, as to the senate, 18 seats for Oahu County, 3 seats for Hawai'i County, 3 seats for Maui County, and 1 seat for Kauai County. The Commission filed its 2011 Final Reapportionment Plan with Chief Election Officer Scott Nago on September 26, 2011. Nago gave public notice of the final reapportionment plan sometime thereafter.

## C.

On October 10, 2011, a petition challenging the 2011 Final Reapportionment Plan was filed with this court by Hawai'i County Senator Solomon and Hawai'i County Democratic Committee members Hao, Cook and Pavao (collectively "Solomon"). They asserted that: (1) the concept of "permanent residents" in article IV, section 4 was "designed to extract *all*, not some of the nonresident military, [nonresident military] dependents and nonresident students from the entire population base" for apportionment of the state legislature; (2) the Commission was provided by its own expert staff with "a reasonably accurate statewide count" of approximately 121,494 nonresident military, nonresident military dependents, and nonresident students, but the Commission extracted from this count "only a modest portion" of some 16,000 nonresident military and nonresident students and "willfully refused" to follow its own Standards and Criteria requiring extraction of nonresident students and nonresident military from the permanent resident population base; (3) the Commission was not required to have extraction information that was "neighborhood specific" "to perform the article IV, section 4 statewide extraction of nonpermanent residents" and it improperly extracted nonresidents "island by island from specific locations" rather than "off the top of the statewide census base;" and (4) the Commission "knew that extraction in excess of 20,000 would trigger the loss of an Oahu-based senator from [a nonresident military

and nonresident student] neighborhood," "the fear of Oahu's loss of this senate seat was the driving force for the Commission's 5–3 vote that effectively denied Hawai'i County a 4th senate seat," and "there can be no other rational explanation for the Commission's action."

A second petition challenging the 2011 Final Reapportionment Plan was filed with this court on October 11, 2011 by Hawai'i County resident Michael Matsukawa. Matsukawa had testified at the Commission's September 14, 2011 public hearing in Kona and had urged the Commission to abide by article IV, section 4's requirement of apportioning the state legislature on a permanent resident base that excluded nonresident military. He asserted in his petition that: (1) the Commission—by employing Extraction A—"removed only *some* of the identifiable and locatable non-permanent residents from the population base, but not a sufficient number so as to affect the current apportionment of legislative seats among the state's four basic island units, a result that could have been achieved if the Commission employed Extraction B or Extraction C or had developed any other methodology within a reasonable time;" (2) the Commission failed to make an honest and good faith effort to execute its duty to apportion the state legislature in accordance with article IV, section 4 by using its statutory power to gather information necessary to identify and locate non-permanent residents, but instead "bemoaned the difficulty of its work" and acted out of "convenience" to adopt a final reapportionment plan by the September 26, 2011 statutory deadline; and (3) the 2011 Final Reapportionment Plan dilutes the representational interest of Hawai'i County in the state legislature by denying Hawai'i County an additional seat in the senate.

Solomon's and Matsukawa's petitions both sought: (1) a judgment invalidating the 2011 Final Reapportionment Plan for the state legislature; (2) a writ of mandamus directing the Commission to prepare and file a new reapportionment plan for the state legislature, and (3) a writ of mandamus directing Chief Election Officer Nago to rescind the

publication of the 2011 Final Reapportionment Plan.

The Commission and the Chief Election Officer, as respondents to Solomon's and Matsukawa's petitions, were directed to answer .the petitions and they answered on November 18, 2011. They argued that the Commission "properly followed the mandate of article IV, section 4" because the Commission determined the total resident population of each county by "identify[ing] and locat[ing] (by census block) the non-permanent residents to be excluded or extracted (active duty military members living in group quarters on base and non-resident students attending a university in Hawaii)."

Governor Abercrombie, as respondent to Solomon's petition, was also directed to answer the petition and he answered on November 21, 2011. He argued that the Commission, "by its own admission," "did not extract all of the non-resident university students and active military personnel and their dependents who declared themselves to be residents of other states, from the population base it used to develop the Final 2011 Reapportionment Plan." He "agree[d] with [Solomon] that the [Commission] did not use the correct population base to allocate the seats of the State Senate (and the State House) under article IV, section 4 and that the Commission must be compelled to correct this error and prepare a revised Final Reapportionment Plan."

On January 4, 2012, we heard oral argument on Solomon's and Matsukawa's petitions. That day, we issued orders granting the petitions. We concluded that the 2011 Final Reapportionment Plan is constitutionally invalid because it includes non-permanent residents in the population base that the Commission used to allocate the members of the state legislature among the basic island units. We invalidated the 2011 Final Reapportionment Plan and directed the Commission to prepare and file a new reapportionment plan that: (1) allocates the members of the state legislature among the basic island units by using a permanent resident population base, and then (2) apportions the members among the districts therein as provided by article IV, section 6. We further directed the Chief Election Officer to rescind the pub-

lication of the 2011 Final Reapportionment Plan for the state legislature.

## II. *JURISDICTION*

"Original jurisdiction is vested in the supreme court of the State to be exercised on the petition of any registered voter whereby it may compel by mandamus or otherwise, the appropriate person or persons to perform their duty or to correct any error made in a reapportionment plan, or it may take such other action to effectuate the purposes of this section as it may deem appropriate. Any such petition shall be filed within forty-five days of the date specified for any duty or within forty-five days after the filing of a reapportionment plan." Hawai'i Constitution, article IV, section 10.

Petitioners Solomon, Hao, Cook and Pavao filed their petition on October 10, 2011, fourteen days after the September 26, 2011 filing of the 2011 Final Reapportionment Plan. They state that they are registered voters in Hawai'i County. Petitioner Matsukawa filed his petition on October 11, 2011, fifteen days after the September 26, 2011 filing of the 2011 Final Reapportionment Plan. He states that he is a Hawai'i County registered voter.

Solomon's and Matsukawa's petitions are petitions by registered voters, filed within forty-five days after the filing of the 2011 Final Reapportionment Plan, that seek writs of mandamus from this court compelling the Commission to correct an error made in the 2011 Final Reapportionment Plan. We have jurisdiction to consider the petitions under article IV, section 10.

## III. *DISCUSSION*

**The Inclusion Of Non–Permanent Residents In The Population Base For The 2011 Reapportionment Of The State Legislature Is An Error In The 2011 Final Reapportionment Plan That Renders The Plan Constitutionally Invalid.**

█ "We have long recognized that the Hawai'i Constitution must be construed with due regard to the intent of the framers and the people adopting it, and the fundamental principle in interpreting a constitutional principle is to give effect to that intent." *Save*

*Sunset Beach Coalition v. Honolulu,* 102 Hawai'i 465, 474, 78 P.3d 1, 10 (2003), quoting *Convention Center Auth. v. Anzai,* 78 Hawai'i 157, 167, 890 P.2d 1197, 1207 (1995).

■ Article IV, sections 4 and 6 provide for apportionment of the state legislature by using a "permanent resident" base. This "mandate[s] that only residents having their domiciliary in the State of Hawai'i may be counted in the population base for the purpose of reapportioning legislative districts." *Citizens for Equit. & Resp. Gov't v. County,* 108 Hawai'i at 322, 120 P.3d at 221.

Article IV, sections 4 and 6 provide a two-step process for apportionment of the state legislature: apportionment *among* the four counties, followed by apportionment *within* the four counties. Article IV, section 4 first requires the Commission to "allocate the total number of members of each house of the state legislature being reapportioned among the four basic island units, . . . using the total number of permanent residents in each of the basic units and computed by the method known as the method of equal proportions[.]" Upon such allocation, article IV, section 6 then requires the Commission to "apportion the members among the districts therein" and "redraw district lines where necessary in such manner that for each house the average number of permanent residents per member of each district is as nearly equal to the average for the basic island unit as practicable."

As explained at the constitutional convention proceeding on apportionment of the state legislature, "[a]pportionment [under article III, section 4, now article IV, section 4] is the process of allocating numbers of representatives or senators to various districts within the State. Districting [under article III, section 4, now article IV, section 6] is the process of making those districts. These are quite different activities." Debates in Committee of the Whole on THE LEGISLATURE—Apportionment and Districting, II *Proceedings of the Constitutional Convention of Hawaii of 1968,* at 204 (1972).

Apportionment of the state legislature in 2011 required the Commission, in step one, to allocate the 25 members of the senate and 51 members of the house of representatives among the four counties. The Commission was then required, in step two, to apportion the senate and house members within county districts.

■ Allocation under step one required the Commission to: (1) determine the total number of permanent residents in the state; (2) divide the total number of permanent residents by 25 and 51 to determine the average number of permanent residents per member of each senate and house district; and (3) divide the total number of permanent residents in each county by the average number of permanent residents per member of each senate and house district. Such allocation required the Commission, as an initial step, to determine the total number of permanent residents in the state and in each county.

Determining the total number of permanent residents in the state and in each county required the Commission, in step one, to extract non-permanent military residents and non-permanent university student residents from the state's and the counties' 2010 Census population. Apportioning the senate and house members among nearly equal numbers of permanent residents required the Commission, in step two, to identify the specific locations of non-permanent military residents and non-permanent university student residents.

The Commission acknowledged a 2010 statewide population of at least 62,545 out-of-state university students and active duty military who declare Hawai'i not to be their home state. The Commission further acknowledged a 2010 statewide population of 58,949 military dependents, the majority of whom are presumably the dependents of 47,082 active duty military—out of 48,015 active duty military—who declare Hawai'i not to be their home state. From these numbers, the Commission extracted, as non-permanent residents, only 16,458 student and military residents with identifiable residence addresses. Identification of the residence addresses for the non-permanent residents was necessary for apportionment of the senate and house members within the county districts under step two, but was not necessary for allocation of the senate and house members among the four counties under step one.

The Commission's data identified, by zip codes, the 47,082 active duty military who declare Hawai'i not to be their home state and the 58,949 military dependents. The data identified 3,203 out-of-state students at Hawaii Pacific University, 627 out-of-state students at Brigham Young University, 1,140 out-of-state students at Chaminade University, and 10,493 out-of-state students at the University of Hawaii (UH) Manoa and Hilo. The UH out-of-state student population of 10,493 consists of 1,233 out-of-state students at UH–Hilo, according to public information provided by Solomon to the Commission.

The Commission had sufficient data to determine the non-permanent military resident populations of each of the counties. The Commission also had data to determine—by the site of Hawaii's universities—the non-permanent student resident populations of each of the counties. As to Hawai'i County, Solomon used the Commission's data and identified for the Commission—by the zip codes of the active duty military and their dependents—28 active duty military and 201 military dependents in Hawai'i County. Solomon also identified for the Commission the 1,233 out-of-state students in Hawai'i County at UH–Hilo. The Commission rejected Solomon's method of identifying the non-permanent resident population of Hawai'i County and identified and excluded only 793 residents from Hawai'i County's permanent population.

The Commission contends that it apportioned the state legislature in accordance with article IV, section 4 because it excluded, from the counties' permanent resident populations, only non-permanent residents identifiable to particular census blocks. However, HRS § 25–2(a) requires the Commission to apportion the state legislature on the "basis, method and criteria" prescribed by article IV, which provides, in section 4, for apportionment "using the total number of permanent residents in each of the basic island units." Nothing in article IV, section 4 requires apportionment based on the total number of permanent residents identified by census block. The 1991 Reapportionment Commission used census blocks to identify, count and locate non-permanent residents, but such method of determining the perma-

nent resident population base was not incorporated in article IV, section 4.

The Commission's method of apportioning the state legislature did not properly separate the step one process of allocating the legislative members among the four counties from the step two process of apportioning the members within county districts. Identifying the non-permanent resident population for step one and identifying the non-permanent resident population for step two were separate processes. The Commission acknowledged at oral argument that it did not differentiate the step one process from the step two process.

The Commission's military data, university data and census data on the state's non-permanent residents identified, for step one, the resident counties for over 100,000 non-permanent residents, but identified, for step two, the residence addresses for only 16,458 non-permanent residents. The Commission undertook its reapportionment task by focusing solely on identification of non-permanent residents for step two and using the results for step two to identify the non-permanent resident population for step one. The result is a Final Reapportionment Plan that includes—in the population base that the Commission used to allocate the 25 members of the senate and 51 members of the house of representatives among the basic island units—at least 45,996 non-permanent university student residents and non-permanent active duty military residents, as well as thousands of other non-permanent residents who are the dependents of the 47,082 non-permanent active duty military residents. The Final Reapportionment Plan disregards the express mandate of article IV, section 4 that only permanent residents be counted in the population base for the purpose of reapportionment of the state legislature. The inclusion of non-permanent residents in the population base for the 2011 reapportionment of the state legislature is an error in the Final Reapportionment Plan. The error renders the Final Reapportionment Plan constitutionally invalid under article IV, section 4.

We invoke our power under article IV, section 10 to correct the error in the Final Reapportionment Plan. The Commission

294

must prepare and file a new plan for the 2011 reapportionment of the state legislature. In preparing a new plan, the Commission must first—pursuant to article IV, section 4—determine the total number of permanent residents in the state and in each county and use those numbers to allocate the 25 members of the senate and 51 members of the house of representatives among the four counties. Upon such allocation, the Commission must then—pursuant to article IV, section 6–apportion the senate and house members among nearly equal numbers of permanent residents within each of the four counties.[8]

---

8. Apportionment under article IV, section 6 requires the Commission to "make an honest and good faith effort to construct districts as nearly of equal population as is practicable.... [M]athematical exactness or precision [is not a] constitutional requirement." *Citizens for Equit. & Resp. Gov't v. County*, 108 Hawai'i at 325, 120 P.3d at 224 (citations omitted).